UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X

YOLANDA JORDAN,                            **NOT FOR PUBLICATION**

          Plaintiff,                       **MEMORANDUM & ORDER**
                                           11-CV-3001 (KAM)(JO)
     -against-

FORFEITURE SUPPORT ASSOCIATES,

          Defendant.

--------------------------------------X
**MATSUMOTO, United States District Judge:**

          *Pro se* plaintiff Yolanda Jordan ("plaintiff") brings

this action against defendant Forfeiture Support Associates

("FSA" or "defendant") pursuant to the Americans with

Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et seq.*,

and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42

U.S.C. §§ 2000e *et seq.*, alleging employment discrimination on

the basis of her disability, race, and color.  Presently before

the court are defendant's motions to dismiss plaintiff's claims

pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(5),

and 12(b)(6). (ECF No. 18, Defendant's Motions to Dismiss dated

3/21/2012 ("Def. Mots."); ECF No. 19, Memorandum of Law in

Support of Defendant's Motions to Dismiss dated 3/21/2012 ("Def.

Mem.") at 4, 5, 7.)

          For the reasons that follow, the court denies

defendant's Rule 12(b)(1) motion, denies defendant's Rule

12(b)(5) motion without prejudice to renew, grants defendant's
Rule 12(b)(6) motion to dismiss plaintiff's Title VII
discrimination claims based on race and color with prejudice,
grants plaintiff leave to replead her ADA disability and
retaliation claims, and grants plaintiff thirty days from the
date of this Memorandum and Order, or by April 4, 2013, to file
and properly serve the Summons and an Amended Complaint.  Should
plaintiff fail to properly serve and file the Summons and an
Amended Complaint within thirty days, or by April 4, 2013, this
action will be dismissed pursuant to Federal Rule of Civil
Procedure 41 for failure to prosecute and comply with court
orders.

## BACKGROUND

I.  **Facts**

The following facts, taken from plaintiff's Complaint
and her administrative filings before the Equal Employment
Opportunity Commission ("EEOC"),[1] are assumed to be true for the

---

[1] Although plaintiff's EEOC Charge was submitted by defendant, the
"[c]ourt takes judicial notice of [p]laintiff's EEOC charge on a motion to
dismiss." *Morris v. Broadridge Fin. Servs., Inc.*, No. 10-CV-1707, 2010 WL
5187669, at *3 n.2 (E.D.N.Y. Dec. 14, 2010) (citing *Nickens v. N.Y. State
Dep't of Corr. Servs.*, No. 94-CV-5425, 1996 WL 148479, at *1 (E.D.N.Y. Mar.
27, 1996)).  Because plaintiff's EEOC Charge is "a public document filed in
an administrative proceeding, and is integral to plaintiff's [discrimination]
claims, the charge, together with the documents accompanying the charge filed
in the EEOC proceeding, are also properly considered on" a motion to dismiss.

purposes of defendant's motion to dismiss. (*See generally* ECF No. 1, Complaint dated 6/22/2011 ("Compl."); ECF No. 20, Exh. F, Plaintiff's EEOC Charge of Discrimination dated 12/10/2010 and signed on 12/6/2010 ("EEOC Charge").)  In 2005, plaintiff began her employment with FSA as a record examiner/analyst under a contract with the United States Department of Justice ("DOJ"). (*See* EEOC Charge at 3; Compl. at 5.)[2]  In approximately May 2006, plaintiff was diagnosed with carpal tunnel syndrome and promptly informed FSA of her diagnosis. (*See* Compl. at 5; EEOC Charge at 3.)  Plaintiff submitted medical documentation to FSA to confirm her diagnosis. (EEOC Charge at 3.)  Virgil Wooley, plaintiff's FSA manager at the time, allegedly became upset at the news of plaintiff's diagnosis and instructed one of his recruiters to tell plaintiff to "leave the job right now, which [she] did." (Compl. at 5; EEOC Charge at 3.)

After plaintiff's exchange with the recruiter, FSA authorized plaintiff to take a six-week leave of absence due to her carpal tunnel syndrome.[3] (*See* Compl. at 5; EEOC Charge at 3.)

---

*Cohn v. KeySpan Corp.*, 713 F. Supp. 2d 143, 154 (E.D.N.Y. 2010); *see also Morris v. David Lerner Assocs.*, 680 F. Supp. 2d 430, 436 (E.D.N.Y. 2010).
    [2] The court's citations to plaintiff's Complaint and EEOC Charge reference the page numbers automatically generated by the court's electronic case filing system.
    [3] The dates of plaintiff's leave of absence are unclear.  Although plaintiff's EEOC Charge states that "[i]n August 2006, [she] was out of work

During plaintiff's leave of absence, Mr. Wooley called plaintiff and purportedly expressed that she should have taken disability leave rather than "[worker's] compensation." (Compl. at 5; EEOC Charge at 3.) Plaintiff alleges that Mr. Wooley was very disrespectful on the phone and told her that she should be terminated.[4] (Compl. at 5; EEOC Charge at 3.)

Plaintiff returned to work after her six-week leave of absence and was assigned more duties and responsibilities upon her return. (EEOC Charge at 3.) Years later, on August 14, 2009, plaintiff was terminated. (*Id.*; Compl. at 5.) On the day of her termination, Mr. Wooley's recruiter allegedly called plaintiff and instructed her not to return to work the following week because her security clearance was revoked by the government following a background check. (*See* Compl. at 5.) During that phone call, the recruiter informed plaintiff that he did not know why she was not cleared for work. (*Id.*) Plaintiff later learned, however, that during this background check, a

due to [her] disability/impairment for six weeks," (EEOC Charge at 3), her Complaint alleges that "[she] was taken out of work in 2007 for 6 week[s] by the doctor," (Compl. at 5). The court need not resolve this discrepancy to rule on defendant's motions to dismiss.

[4] Plaintiff alleges that Mr. Wooley threatened to fire plaintiff on several other occasions because FSA "was not making any money off of [her]." (Compl. at 5.) In particular, plaintiff maintains that Mr. Wooley called the Administrative Officer of the United States Marshals Service numerous times to find a reason to terminate plaintiff but was informed that plaintiff was a "good worker" who should not be terminated. (*Id.*) Plaintiff does not provide the dates for this alleged conduct.

"discrepancy regarding [her] credit history was discovered."
(EEOC Charge at 3.)

Concerned about her security clearance, plaintiff
contacted the United States Marshals Service's Administrative
Officer, Linda Rudolph, to seek more information about her
termination and the revocation of her clearance. (*See* Compl. at
5.)  Ms. Rudolph then called the DOJ to investigate the status
of plaintiff's clearance. (*Id.*)  Thereafter, a DOJ employee,
Vera Adams, allegedly faxed plaintiff a background investigation
disclosure form, which plaintiff signed on August 20, 2009.
(Compl. at 5, 10.)  Plaintiff maintains that Ms. Adams
subsequently conducted another background check and that
plaintiff's "security clearance was cleared." (Compl. at 5.)  In
her EEOC Charge, plaintiff states that she received a phone call
in October 2009 confirming that her "background investigation
was good and that the [DOJ] was waiting on [defendant] to bring
[her] back." (EEOC Charge at 3.)  Plaintiff further claims that
despite the purported reinstatement of her security clearance,
defendant replaced her with another individual, whose race,
color, and disability status are unidentified in plaintiff's
Complaint and EEOC Charge. (*See id*; Compl. at 5.)

5

Based on the foregoing, plaintiff alleges that defendant terminated her on August 14, 2009 based on her disability, failed to accommodate her disability, and retaliated against her for taking her six-week leave of absence on worker's compensation rather than disability. (EEOC Charge at 3; Compl. at 3.) Finally, for the first time in her Complaint, plaintiff alleges discrimination based on her race and color. (Compl. at 1, 3.)

## II. **Procedural History**

Plaintiff filed her EEOC Charge on December 10, 2010. (EEOC Charge at 2.) In her EEOC Charge, plaintiff checked the boxes for discrimination based on "disability" and "retaliation," leaving unchecked the boxes for "race" and "color." (*Id.*) Additionally, plaintiff specified that the alleged discrimination took place between June 1, 2006 and August 14, 2009, the date of her termination. (*Id.*) On March 21, 2011, the EEOC issued a right to sue letter informing plaintiff that it was "unable to conclude that [the] information obtained establishes violations of the statutes." (Compl. at 7-8.) Plaintiff alleges that she received the EEOC's letter on March 26, 2011. (*Id.* at 6.)

On June 22, 2011, plaintiff filed a *pro se* Complaint asserting claims under the ADA and Title VII. (*See id.* at 1.) On July 6, 2011, Magistrate Judge James Orenstein ordered plaintiff to serve the Summons and Complaint on defendant by October 20, 2011 and warned plaintiff that her failure to do so could result in dismissal of the action. (ECF No. 3, Judge Orenstein's Order dated 7/6/2011.) On October 19, 2011, the court received copies of postal receipts indicating that unidentified documents were delivered by certified mail to FSA's office in Ashburn, Virginia. (ECF No. 5, Postal Receipts Appended to Returned Summons.) On October 25, 2011, Judge Orenstein issued an order advising plaintiff that she needed to "either file proof of timely service" or "file a motion requesting an extension of time to effect service for good cause" by November 8, 2011. (ECF No. 4, Judge Orenstein's Order dated 10/25/2011.) Judge Orenstein further informed plaintiff that failure to comply with his October 25th order would result "in a recommendation that the case be dismissed for failure to prosecute." (*Id.*)

By letter dated November 4, 2011, plaintiff responded to Judge Orenstein's October 25th Order and submitted certified mail receipts of her "service" of the Summons and Complaint on

defendant. (ECF No. 11, Plaintiff's Letter regarding Service dated 11/4/2011 and received 11/7/2011 ("Pl. Serv. Ltr.").) On March 21, 2012, defendant served its motions to dismiss on plaintiff. (*See generally* Def. Mots.; ECF No. 23, Certificate of Service dated May 7, 2012 ("Cert. of Serv.").) Although plaintiff's opposition to defendant's motions was initially due on April 23, 2012, defendant did not receive plaintiff's opposition by that date. (*See* ECF No. 21, Def. Letter dated 5/7/2012.) By Order dated May 8, 2012, the court afforded plaintiff another opportunity to submit her opposition papers and directed plaintiff to serve her opposition on defendant by May 18, 2012. (Order dated May 8, 2012.) On May 21, 2012, defendant filed a letter notifying the court that it still had not received any opposition papers from plaintiff. (ECF No. 26, Def. Letter dated 5/21/2012.)

Accordingly, having given plaintiff multiple opportunities to respond to defendant's motions to dismiss, the court deems defendant's motions unopposed and will decide them on the merits. (*See* Order dated May 8, 2012.)

## DISCUSSION

Defendant urges this court to dismiss plaintiff's Complaint with prejudice pursuant to Rules 12(b)(1), 12(b)(5),

and 12(b)(6). (Def. Mem. at 1.)  The court addresses each of
defendant's motions in turn.

## I.   __Rule 12(b)(1) Motion__

Pursuant to Rule 12(b)(1), defendant moves to dismiss
plaintiff's Title VII claims for lack of subject matter
jurisdiction on the grounds that plaintiff failed to exhaust her
administrative remedies with respect to her discrimination
claims based on race and color. (*Id.* at 5-7.)

Defendant, however, mischaracterizes Title VII's
statutory exhaustion requirement as a jurisdictional
prerequisite and therefore erroneously invokes Rule 12(b)(1).
The Second Circuit has clarified "that presentation of a Title
VII claim to the EEOC 'is not a jurisdictional [prerequisite],
but only a precondition to bringing a Title VII action.'"
*Francis v. City of New York,* 235 F.3d 763, 768 (2d Cir. 2000)
(alteration in original) (quoting *Pietras v. Bd. of Fire
Comm'rs*, 180 F.3d 468, 474 (2d Cir. 1999)); *see also Cobb v.
XSPORT Fitness*, *Inc.*, No. 09-CV-3553, 2010 WL 1741370, at *4
(E.D.N.Y. Apr. 28, 2010) ("[E]xhaustion is . . . not a
jurisdictional bar to suit."); *O'Neal v. State Univ. of N.Y.,
Health Sci. Ctr. Brooklyn*, No. 01-CV-7802, 2003 WL 1524664, at
*4 (E.D.N.Y. Mar. 24, 2003) ("[T]he district court's subject

matter jurisdiction does not depend on the exhaustion of
administrative remedies.").  As such, defendant's motion to
dismiss plaintiff's Title VII claims for failure to exhaust her
administrative remedies "is more properly brought under Rule
12(b)(6)," rather than Rule 12(b)(1). *Keller v. Star Nissan,
Inc.*, No. 07-CV-4551, 2009 WL 4281038, at *2 (E.D.N.Y. Nov. 30,
2009) (citing *O'Neal*, 2003 WL 1524664, at *4-5); *see also Hamzik
v. Office for People with Developmental Disabilities*, 859 F.
Supp. 2d 265, 276 n.9 (N.D.N.Y. 2012) ("[T]his [exhaustion]
argument is properly raised as a failure to state a claim under
Rule 12(b)(6) rather than as a lack of subject matter
jurisdiction under Rule 12(b)(1).").

    Accordingly, the court denies defendant's Rule
12(b)(1) motion to dismiss for lack of subject matter
jurisdiction and instead construes defendant's administrative
exhaustion defense under Rule 12(b)(6), as discussed below.[5]

---

[5] The failure to exhaust administrative remedies is an affirmative
defense, for which defendant bears the burden of proof. *Broich v. Inc. Vill.
of Southampton*, 650 F. Supp. 2d 234, 246 (E.D.N.Y. 2009).  "An 'affirmative
defense is normally asserted in an answer,' but it may be raised on a motion
to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) where 'the complaint itself
establish[es] the circumstances required as a predicate to a finding' that
the affirmative defense applies." *In re Sept. 11 Prop. Damage & Bus. Loss
Litig.*, 481 F. Supp. 2d 253, 258 (S.D.N.Y. 2007) (alteration in original)
(quoting *McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004)); *see also McCoy
v. Goord*, 255 F. Supp. 2d 233, 251 (S.D.N.Y. 2003) ("If nonexhaustion is
clear from the face of the complaint (and incorporated documents), a motion
to dismiss pursuant to Rule 12(b)(6) for failure to exhaust should be

## II.  **Rule 12(b)(5) Motion**

Defendant moves to dismiss plaintiff's Complaint in its entirety for insufficient service of process pursuant to Rule 12(b)(5).  Specifically, defendant contends that service via certified mail is not an adequate method of serving a limited liability company under the applicable federal and state rules. (Def. Mem. at 4.)  Defendant maintains that plaintiff's failure to effect adequate service warrants dismissal with prejudice, especially in light of the court's previous warnings that failure to properly serve FSA could result in dismissal of plaintiff's Complaint. (*Id.* at 5.)

Plaintiff, on the other hand, claims that she properly served defendant.  Specifically, by letter dated November 4, 2011, plaintiff informed the court that she timely served the Summons and Complaint on defendant via certified mail. (Pl. Serv. Ltr. at 1.)  To support her claim, plaintiff submitted postal receipts verifying that she sent certain unidentified documents to FSA's office in Ashburn, Virginia via certified mail and that those documents were delivered to FSA in July

---

granted.").  For the reasons articulated below, the court finds that plaintiff's failure to exhaust her administrative remedies with respect to her Title VII discrimination claims based on race and color is clear from the face of the Complaint and documents within the purview of judicial notice. Thus, defendant may properly assert its exhaustion defense in its pre-answer motion to dismiss under Rule 12(b)(6).

2011. (*See id.* at 2-3.)  The postal receipts indicate that she addressed the certified mail to "Forfeiture Support Associates." (*Id.* at 2, 4.)

   **A.    Legal Standard for Rule 12(b)(5)**

Rule 12(b)(5) "authorizes dismissal of a complaint for insufficient service of process upon motion by a defendant made prior to the defendant's filing an answer." *Forte v. Lutheran Augustana Extended Care & Rehab. Ctr.*, No. 09-CV-2358, 2009 WL 4722325, at *2 (E.D.N.Y. Dec. 9, 2009).  In deciding a Rule 12(b)(5) motion, "[a] court looks to materials outside of the pleadings in determining whether service of process has been insufficient." *Keller*, 2009 WL 4281038, at *4.  Moreover, once "'a defendant moves to dismiss under Rule 12(b)(5), the plaintiff bears the burden of proving adequate service." *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010) (quoting *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005)); *see also Hertzner v. U.S. Postal Serv.,* No. 05-CV-2371, 2007 WL 869585, at *3 (E.D.N.Y. Mar. 20, 2007) ("When a defendant makes a Rule 12(b)(5) motion, it is the plaintiff's burden of proof to establish its service of process was adequate.").  Plaintiff has not opposed defendant's Rule

12(b)(5) motion to dismiss, much less satisfied her burden of establishing adequate service of process.

**B.    Service of Process on a Limited Liability Company**

In ruling on a Rule 12(b)(5) motion, a court "must look to Rule 4, which governs the content, issuance, and service of a summons" in federal court. *DeLuca v. AccessIT Grp., Inc.* 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010).  Under Rule 4, plaintiff may request a waiver of service from defendant.  Absent a waiver, however, plaintiff must properly serve her Summons and Complaint upon defendant, a limited liability company, in one of two ways authorized by the Federal Rules.  Here, plaintiff did not request a waiver of service and has failed to effect proper service under either method set forth under the Federal Rules.

**1.    *Rule 4(d) – Waiver of Service***

As a preliminary matter, plaintiff may request a waiver of service from defendant pursuant to Rule 4(d). Specifically, "plaintiff may notify . . . defendant that an action has been commenced and request that the defendant waive service of a summons." Fed. R. Civ. P. 4(d)(1).  The notice and request for a waiver must

> (A) be in writing and be addressed . . . to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process;

(B) name the court where the complaint was
filed;

(C) be accompanied by a copy of the
complaint, two copies of a waiver form, and
a prepaid means for returning the form;

(D) inform the defendant, using text
prescribed in Form 5,[6] of the consequences of
waiving and not waiving service;

(E) state the date when the request is sent;

(F) give the defendant a reasonable time of
at least 30 days after the request was sent
– or at least 60 days if sent to the
defendant outside any judicial district of
the United States – to return the waiver;
and

(G) be sent by first-class mail or other
reliable means.

Fed. R. Civ. P. 4(d)(1)(A)-(G). Because plaintiff failed

to request such a waiver in this case, the court must

determine whether plaintiff properly served FSA under

either of the two methods authorized by the Federal Rules.

## 2. *Rule 4(h)(1)(B)*

Under the first method of service authorized by the

Federal Rules, plaintiff may effectuate service upon defendant

by delivering a copy of the summons and of
the complaint to an officer, a managing or

---

[6] For the convenience of *pro se* plaintiff, a copy of Form 5 is
attached to this Memorandum and Order as Court Exhibit 1.

> general agent, or any other agent authorized
> by appointment or by law to receive service
> of process and — if the agent is one
> authorized by statute and the statute so
> requires — by also mailing a copy of each to
> the defendant.

Fed. R. Civ. P. 4(h)(1)(B).  Notably, however, "nothing in Rule

4(h)(1)(B) provides that service by certified mail constitutes

adequate service of process." *Saregama India, Ltd. v. Mosley*,

Nos. 12-MC-45-P1, 11-MC-84-P1, 2012 WL 955520, at *2 (S.D.N.Y.

Mar. 20, 2012); *see also Amnay v. Del Labs*, 117 F. Supp. 2d 283,

286-87 (E.D.N.Y. 2000) ("Fed. R. Civ. P. 4(h) . . . [does not]

authorize[] service on corporations via mail.").  Accordingly,

plaintiff's attempts to serve the Summons and Complaint upon

defendant via certified mail are insufficient under Rule

4(h)(1)(B).

### 3.   *Rule 4(h)(1)(A) – State Law*

Under the second authorized method of service,

plaintiff may serve defendant by "following state law for

serving a summons in an action brought in courts of general

jurisdiction in the state where the district court is located or

where service is made." Fed. R. Civ. P. 4(h)(1)(A), 4(e).  The

court must therefore determine whether plaintiff properly served

defendant under the laws of New York, the state in which this

court is located, or Virginia, the state in which plaintiff

served FSA. *See id.*

Under New York state law, plaintiff may serve

defendant by delivering a copy of the Summons and Complaint

personally to

> (i) any member of the limited liability
> company in this state, if the management of
> the limited liability company is vested in
> its members, (ii) any manager of the limited
> liability company in this state, if the
> management of the limited liability company
> is vested in one or more managers, (iii) to
> any other agent authorized by appointment to
> receive process, or (iv) to any other person
> designated by the limited liability company
> to receive process, in the manner provided
> by law for service of a summons as if such
> person was a defendant.

N.Y. C.P.L.R. § 311-a (McKinney 1999). Plaintiff did not comply

with this method of service. Like Rule 4(h)(1)(B), New York

state law does not authorize service on a corporation or limited

liability company via mail. *See Conway v. Am. Red Cross*, No. 10-

CV-1859, 2010 WL 4722279, at *4 (E.D.N.Y. Nov. 15, 2010)

("Service on a corporation solely by certified mail, return

receipt requested is insufficient."); *Amnay*, 117 F. Supp. 2d at

286-87. In addition, plaintiff has failed to establish that she

delivered the Summons and Complaint to a member, manager, or

agent of FSA or any other person designated by FSA to receive service of process. *See* N.Y. C.P.L.R. § 311-a.

Additionally, under limited circumstances, plaintiff may effect proper service on defendant via first-class mail, provided certain statutorily prescribed forms are included in the mailing. Specifically, New York law provides that

> [a]s an alternative to the methods of personal service authorized by section 307, 308, 310, 311 or 312 of this article, a summons and complaint . . . may be served by the plaintiff or any other person by mailing to the person or entity to be served, by first class mail, postage prepaid, a copy of the summons and complaint . . . together with two copies of a statement of service by mail and acknowledgment of receipt in the form set forth in subdivision (d) of this section, with a return envelope, postage prepaid, addressed to the sender.

N.Y. C.P.L.R. § 312-a (McKinney 2009). Plaintiff has not satisfied the additional requirements enumerated in this statutory provision. Although plaintiff submits evidence that she served the defendant by certified mail, she "presented no evidence that copies of the summons and complaint were sent to the defendants, by first-class mail, together with, inter alia, two copies of a statement of service by mail and acknowledgment of receipt, and that the signed acknowledgment of receipts were mailed or delivered to the plaintiff." *Klein v. Educ. Loan*

*Servicing, LLC*, 71 A.D.3d 957, 958 (N.Y. App. Div. 2d Dep't 2010) (citing N.Y. C.P.L.R. §§ 312-a(a), (b)).  Not having done so, plaintiff has failed to effect proper service pursuant to N.Y. C.P.L.R. § 312-a.

New York law also authorizes plaintiff to serve defendant through the New York Secretary of State

> by personally delivering to and leaving with the secretary of state or his or her deputy, or with any person authorized by the secretary of state to receive such service, at the office of the department of state in the city of Albany, duplicate copies of such process together with the statutory fee . . . . Service of process on such limited liability company shall be complete when the secretary of state is so served.

N.Y. Ltd. Liab. Co. Law § 303(a) (McKinney 1999).  This method of service, however, is unavailable here because defendant does not appear to be a New York limited liability company registered with the New York Secretary of State.  In any event, plaintiff directed her inadequate service attempts at defendant and did not attempt to serve the Summons and Complaint on the New York Secretary of State.

Under Virginia law, plaintiff may properly serve defendant by personally serving defendant's registered agent or the clerk of the Virginia State Corporation Commission if a registered agent has not been appointed or cannot be found with

18

reasonable diligence. *See* Va. Code § 13.1-1018; *Lizarzu v. Vallejos*, No. 08-CV-858, 2009 WL 3055443, at *6 (E.D. Va. Sept. 22, 2009).  Plaintiff has failed to comply with either method of service authorized by Virginia law.

In sum, plaintiff has failed to establish that she effectuated proper service of the Summons and Complaint upon defendant in accordance with the Federal Rules, New York law, or Virginia law.

**C.    Time to Effect Proper Service under Rule 4(m)**

"Federal Rule of Civil Procedure 4(m) governs both (1) the dismissal of actions for untimely service of process and (2) extensions of the time in which service may be effected." *Zapata v. City of New York*, 502 F.3d 192, 195 (2d Cir. 2007), *cert. denied*, 552 U.S. 1243 (2008).  Under Rule 4(m),

> [i]f a defendant is not served within 120 days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).  As previously explained, plaintiff failed to effectuate proper service on defendant at all, much less within the 120-day deadline imposed by Rule 4(m).  As such, the

court must determine whether plaintiff is entitled to an extension of time to properly serve FSA.

Under Rule 4(m), "it is clear . . . that an extension is always warranted upon a showing of 'good cause.'" *Zapata*, 502 F.3d at 197. In determining whether a plaintiff has shown good cause, courts generally consider two factors: "'(1) the reasonableness and diligence of Plaintiff's efforts to serve, and (2) the prejudice to the Moving Defendants from the delay.'" *Micciche v. Kemper Nat'l Servs.*, 560 F. Supp. 2d 204, 209 (E.D.N.Y. 2008) (quoting *Lab Crafters, Inc. v. Flow Safe, Inc.*, 233 F.R.D. 282, 284 (E.D.N.Y. 2005)); *see also DeLuca*, 695 F. Supp. 2d at 66 ("In determining whether a plaintiff has shown good cause, courts weigh the plaintiff's reasonable efforts and diligence against the prejudice to the defendant resulting from the delay."). "Good cause is generally found only in exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond [her] control." *Beauvoir v. U.S. Secret Serv.*, 234 F.R.D. 55, 56 (E.D.N.Y. 2006) (quoting *Eastern Refractories Co. v. Forty Eight Insulations, Inc.*, 187 F.R.D. 503, 505 (S.D.N.Y. 1999)) (internal quotation marks omitted).

Plaintiff has failed to articulate any exceptional circumstances warranting a finding of "good cause" in this case. Plaintiff's efforts to serve FSA in a timely manner did not fail because of circumstances beyond her control.  Nor have plaintiff's efforts to serve FSA been diligent.  To the contrary, plaintiff attempted, and ultimately failed, to properly serve the defendant via mail only after Judge Orenstein informed her of her continued failure to serve defendant properly. (*See* Judge Orenstein's Order dated 7/6/2011; Judge Orenstein's Order dated 10/25/2011.)  Notably, plaintiff's *pro se* status does not alter the court's determination that plaintiff has failed to establish good cause for her improper service.  "[A] plaintiff's *pro se* status is no excuse for failure to serve the defendant properly and does not automatically amount to good cause for failure to serve within the time allotted by Rule 4(m) . . . ." *Harper v. NYC Admin. for Children's Servs.*, No. 09-CV-2468, 2010 WL 23328, at *2 (S.D.N.Y. Jan. 5, 2010).  Indeed, "'[i]gnorance of the law, even in the context of *pro se* litigants, does not constitute good cause.'" *Sleigh v. Charlex, Inc.*, No. 03-CV-1369, 2004 WL 2126742, at *4 (S.D.N.Y. Sept. 14, 2004) (alteration in

original) (quoting *Charles v. N.Y.C. Police Dep't*, No. 96-CV-9757, 1999 WL 717300, at *6 (S.D.N.Y. Sept. 15, 1999)).

Although plaintiff has failed to make an adequate showing of good cause, "district courts have discretion to grant extensions even in the absence of good cause." *Zapata*, 502 F.3d at 196; *see also Deluca*, 695 F. Supp. 2d at 67 ("A Court has discretion to grant an extension to serve process even absent a showing of good cause."). In determining whether to exercise such discretion, courts consider the following factors: "(1) whether the applicable statute of limitations would bar the refiled action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by the granting of plaintiff's request for relief from the provision." *Carroll v. Certified Moving & Storage, Co.*, No. 04-CV-4446, 2005 WL 1711184, at *2 (E.D.N.Y. July 19, 2005) (internal quotation marks omitted). These factors, taken together, militate in favor of granting *pro se* plaintiff an extension of time to effect proper service on FSA.

First, the statute of limitations applicable to Title VII and ADA cases would likely bar any refiled action or

complaint.  It is well-settled that a "Title VII action must be commenced within ninety days of receipt of a right to sue letter from the EEOC." *E.g.*, *Hollomon v. City of New York*, No. 04-CV-2964, 2006 WL 2135800, at *4 (E.D.N.Y. July 31, 2006). Additionally, the ADA has incorporated the same statute of limitations. *See* 42 U.S.C. § 12117(a) (incorporating 42 U.S.C. § 2000e-5).

Here, plaintiff timely filed her federal Complaint within the ninety-day limitations period applicable to Title VII and the ADA.  Yet, a dismissal of her Complaint, even without prejudice, would likely render any subsequent complaint or action time-barred under the applicable statute of limitations. The Second Circuit has held that "[i]n instances where a [Title VII or ADA] complaint is timely filed and later dismissed, the timely filing of the complaint does not 'toll' or suspend the 90-day limitations period." *Minnette v. Time Warner*, 997 F.2d 1023, 1027 (2d Cir. 1993); *see also Cohn v. KeySpan Corp.*, 713 F. Supp. 2d 143, 156 (E.D.N.Y. 2010) ("The timely filing of a complaint subsequently dismissed without prejudice does not toll or suspend the ninety (90)-day limitations period.").  The Second Circuit has clarified, however, that the "statute of limitations for the underlying claim is tolled" during the one

23

hundred twenty-day period set forth in Rule 4(m). *See Frasca v. United States*, 921 F.3d 450, 453 (2d Cir. 1990). "If service is not complete by the end of the 120 days, however, the governing statute of limitations again becomes applicable, and the plaintiff must refile prior to the termination of the statute of limitations period." *Id.; see also Hollomon*, 2006 WL 2135800, at *3. Thus, the one hundred twenty-day service period, rather than the filing of the Complaint, tolls the ninety-day statute of limitations under Title VII and the ADA.

Here, plaintiff filed her Complaint on the eighty-eighth day after she received a right to sue letter from the EEOC. Thereafter, the remaining time on the limitations period – two days – remained suspended during the one hundred twenty-day period for service under Rule 4(m). *See Ocasio v. Fashion Inst. of Tech.*, 9 F. App'x 66, 68 (2d Cir. 2001) (summary order). Upon completion of that one hundred twenty-day tolling period on October 20, 2011, the limitations period again became applicable and ran for the remaining two days of the limitations period. *See id.* Thus, the ninety-day statute of limitations for plaintiff's claims expired on October 22, 2011, and any complaint or action filed thereafter would be time-barred. Accordingly, this first factor weighs in favor of granting

plaintiff an extension of time to properly serve FSA with the
Summons and Complaint. *See Pierre ex rel. Pierre v. Dep't of
Educ.*, 07-CV-6270, 2008 WL 2369224, at * 3 (S.D.N.Y. June 10,
2008) ("'Relief may be justified, for example, if the applicable
statute of limitations would bar the refiled action' . . . .");
*Carroll*, 2005 WL 1711184, at *3 ("Courts have consistently
considered the fact that the statute of limitations has run on a
plaintiff's claim as a factor favoring the plaintiff in a Rule
4(m) analysis." (internal quotation marks omitted)).

The second factor similarly militates in favor of
granting plaintiff an extension. Defendant undoubtedly had
actual notice of the issues underlying the Complaint. Plaintiff
sent the Summons and Complaint to FSA via certified mail but
failed to comply with the service requirements set forth under
the Federal Rules. Moreover, it is undisputed that defendant
received plaintiff's pleadings and in fact filed the instant
motions to dismiss based on those pleadings. Thus, this factor
similarly favors granting plaintiff an extension.

The third factor is inapplicable and does not favor
granting plaintiff an extension of time to serve. Defendant has
not attempted to conceal the defect in plaintiff's attempted
service. Nevertheless, this factor alone does not offset the

numerous reasons that support granting plaintiff additional time
to correct service of process.

The fourth factor favors plaintiff because defendant
is not prejudiced by extending the time within which plaintiff
may serve her pleadings in conformity with the Federal Rules.
Although defendant "will be burdened with the obligation to
defend this lawsuit if the extension is granted, . . . that does
not rise to the level of prejudice necessary to tip the balance
of this factor in [defendant's] favor." *Lumbermens Mut. Cas. Co.
v. Dinow*, No. 06-CV-3881, 2009 WL 2424198, at *4 (E.D.N.Y. Aug.
6, 2009).

On balance, the foregoing factors counsel against
dismissal and weigh heavily in favor of granting plaintiff a
final opportunity to effectuate proper service.  Consequently,
rather than dismiss plaintiff's Complaint without prejudice, the
court grants plaintiff a thirty-day extension of time from the
date of this Memorandum and Order to serve defendant with an
Amended Complaint as described below, in accordance with the
methods of service authorized by the Federal Rules.  Upon proper
service, plaintiff must file proof of service with the court by
filing an affidavit completed by her process server. *See* Fed. R.
Civ. P. 4(l)(1).  Should plaintiff fail to effectuate proper

service of the Summons and an Amended Complaint within thirty

days of this Memorandum and Order, the court shall dismiss this

case for insufficient service of process.[7]

### D. Leave to Serve Amended Complaint Within the Extension Period

In light of the significant pleading deficiencies

raised by defendant's Rule 12(b)(6) motion discussed below, the

court grants plaintiff leave to replead her ADA claims in an

Amended Complaint,[8] which plaintiff must properly serve on FSA

within the thirty-day extension period. *See DeLuca*, 695 F. Supp.

2d at 67 (granting plaintiff "thirty days leave to re-serve the

summons along with the complaint (or an amended complaint,

should one be filed)"). This approach is warranted for two

reasons. First, granting plaintiff leave to serve an Amended

Complaint, in lieu of her initial Complaint, within the thirty-

day extension period is consistent with the Second Circuit's

directive that a *pro se* complaint should be construed liberally

and "should not be dismissed without granting leave to replead

at least once" where, as here, a liberal reading of the

_____

[7] Pursuant to Rule 4(c)(3), plaintiff may request the court to "order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court." Fed. R. Civ. P. (4)(c)(3).
    [8] As explained in further detail below, the court dismisses plaintiff's Title VII race and color discrimination claims with prejudice. Consequently, plaintiff may not replead her Title VII claims in the Amended Complaint.

Complaint "'gives any indication that a valid claim might be stated.'" *Barnes v. United States*, 204 F. App'x 918, 919 (2d Cir. 2006) (summary order) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (per curiam)). Second, permitting plaintiff to serve an Amended Complaint within the thirty-day extension period promotes judicial efficiency. Requiring plaintiff to serve her initial Complaint would result in the dismissal of that Complaint under Rule 12(b)(6) for the several reasons articulated below. Upon dismissal of the original Complaint, this court would likely grant leave to replead, in keeping with the Second Circuit's pronouncement that such leave should be freely granted to *pro se* litigants. Rather than unnecessarily expend judicial resources and entangle the parties in protracted litigation, the court will grant plaintiff the opportunity to serve an Amended Complaint only as to her disability discrimination claims within thirty days of this Memorandum and Order.

## III. Rule 12(b)(6) Motion

In light of plaintiff's failure to properly serve defendant, the court presently lacks personal jurisdiction over FSA. *See Dynegy Midstream Servs., LP v. Trammochem,* 451 F.3d 89, 94 (2d Cir. 2006) ("Before a federal court may exercise personal

jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." (internal quotation marks omitted)); *Conway*, 2010 WL 4722279, at *2-3. Even in the absence of personal jurisdiction over defendant under Rule 12(b)(5), defendant has also moved to dismiss the plaintiff's claims pursuant to Rule 12(b)(6). Defendant's motion to dismiss exposes the lack of a sufficient factual basis regarding plaintiff's disability claims under the ADA and sets forth the legal basis for dismissing plaintiff's Title VII claims based on race and color. In drafting her Amended Complaint, which may include only her ADA claims, plaintiff is to be mindful of the significant pleading defects outlined below.

### A.    Legal Standard for Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 65 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although the court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir.

2007), plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Indeed, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (alterations in original) (internal quotation marks omitted).

"[I]n an employment discrimination case, the plaintiff is not required to set forth specific facts that establish each and every element of a *prima facie* case of discrimination"; rather, the plaintiff need only plead sufficient facts "to state a plausible claim that also gives fair notice to the defendant of the basis for each claim." *Bakeer v. Nippon Cargo Airlines, Co.*, No. 09-CV-3374, 2011 WL 3625103, at *22 (E.D.N.Y. July 25, 2011), *adopted by* 2011 WL 3625083 (E.D.N.Y. Aug. 12, 2011); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002) (noting that the "Federal Rules do not contain a heightened pleading standard for employment discrimination suits").  "The elements of a *prima facie* case do, however, 'provide an outline of what is necessary to render [a plaintiff's employment discrimination] claims for relief plausible.'" *Pahuja v. Am.*

*Univ. of Ant.*, No. 11-CV-4607, 2012 WL 6592116, at *9 (S.D.N.Y.
Dec. 18, 2012) (alteration in original) (quoting *Sommerset v.
City of New York*, No. 09-CV-5916, 2011 WL 2565301, at *5
(S.D.N.Y. June 28, 2011)).  Accordingly, the court will
"consider these elements in determining whether there is
sufficient factual matter in the complaint which, if true, gives
Defendant a fair notice of Plaintiff's claim and the grounds on
which it rests." *Murphy v. Suffolk Cnty. Cmty. Coll.*, No. 10-CV-
251, 2011 WL 5976082, at *5 (E.D.N.Y. Nov. 29, 2011).

In considering plaintiff's motion to dismiss, the
court must be mindful of its obligation to "construe [*pro se*
plaintiff's*] pleadings liberally," particularly because she
alleges civil rights violations in her Complaint. *McEachin v.
McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004) (citing *Weinstein v.
Albright*, 261 F.3d 127, 132 (2d Cir. 2001)).  Even liberally
construed, plaintiff's Complaint, as pled, fails to state a
plausible claim for relief under either Title VII or the ADA.

### B.    Plaintiff's Unexhausted Title VII Claims

As previously noted, defendant's administrative
exhaustion defense to plaintiff's Title VII claims is properly
construed under Rule 12(b)(6).  It is well settled that a
plaintiff's timely exhaustion of administrative remedies is "an

essential element of Title VII's statutory regime." *Butts v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993), *superseded by statute on other grounds as stated in Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684 (2d Cir. 1998).  Furthermore, the administrative charge of discrimination must be brought within three hundred days of the alleged discriminatory act to be timely. 42 U.S.C. § 2000e-5(e); 42 U.S.C. § 12117(a); *see also Baroor v. N.Y.C. Dep't of Educ.*, 362 F. App'x 157, 159 (2d Cir. 2010) ("For a Title VII claim arising in New York to be timely, a plaintiff must file the charge with the Equal Employment Opportunity Commission ('EEOC') within 300 days of the allegedly unlawful employment practice."); *O'Leary v. Town of Huntington*, No. 11-CV-3754, 2012 WL 3842567, at *4 (E.D.N.Y. Sept. 5, 2012) ("[A] plaintiff in New York has 300 days from the date of accrual to file an ADA charge with the EEOC." (citing *Harris v. City of New York*, 186 F.3d 243, 247-48 (2d Cir. 1999)).  As such, "[c]laims that were not asserted in an EEOC charge may only be pursued in a federal action if they are reasonably related to those that were [timely] filed with the agency". *Roff v. Low Surgical & Med. Supply, Inc.*, No. 03-CV-3655, 2004 WL 5544995, at *2 (E.D.N.Y. May 11, 2004) (citing *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003); *Legnani v.*

*Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001)). "A claim is considered 'reasonably related' if 'the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made.'" *Wilson v. Family Dollar Stores*, No. 06-CV-639, 2007 WL 952066, at *4 (E.D.N.Y. Mar. 29, 2007) (quoting *Fitzgerald v. Henderson,* 251 F.3d 345, 359-60 (2d Cir.2001)).[9]

"In determining whether claims are reasonably related, the focus should be on the factual allegations made in the EEOC charge itself, describing the discriminatory conduct about which a plaintiff is grieving." *Deravin*, 335 F.3d at 201 (internal quotation marks and alteration omitted). "'The central question is whether the complaint filed with the [EEO] gave th[e] agency adequate notice to investigate discrimination on both bases.'" *Mathirampuzha v. Potter*, 548 F.3d 70, 77 (2d Cir. 2008)

---

[9] There are two additional types of claims that fall within the "reasonably related" exception: namely, (1) claims alleging "retaliation arising from the filing of an EEOC charge," and (2) claims alleging "further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Roff*, 2004 WL 5544995, at *2 (internal quotation marks omitted) (citing *Butts*, 990 F.2d at 1402-03). Both of these types of claims are inapplicable here. Plaintiff fails to allege that defendant discriminated against her on the basis of her race or color in order to retaliate against her for filing her EEOC Charge. In fact, plaintiff fails to plead any allegations related to defendant's purported discrimination based on her race or color. Nor does plaintiff allege that defendant carried out further incidents of race or color discrimination in "precisely the same manner alleged in the EEOC charge." *Id.*

(alterations in original) (quoting *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (per curiam)). The court notes that "this standard is applied generously where a plaintiff is not represented by counsel, as [the] [c]ourt seeks to effectuate the purpose of the underlying statutes." *Abel v. N.Y.C., Human Res. Admin.*, No. 10-CV-295, 2011 WL 812309, at *4 (S.D.N.Y. Mar. 3, 2011) (citing *Nakis v. Potter*, No. 01-CV-10047, 2004 WL 2903718, at *12 (S.D.N.Y. Dec. 15, 2004)).

Even under a generous application of this legal standard, the allegations in plaintiff's EEOC Charge cannot be considered "reasonably related" to the allegations of race and color discrimination raised in her federal Complaint. For example, in *Abel*, a *pro se* plaintiff claimed that her former employer discriminated against her on the basis of her race, national origin, and disability and retaliated against her for an unspecified protected activity. *Id.* at *1. The district court noted that the allegations in the plaintiff's EEOC charge focused "entirely on her disability, her need to miss work because of this illness, and the poor treatment she contends she received because she had taken frequent sick leave." *Id.* at *4. The district court in *Abel* further observed that the plaintiff "never even mentions what her race or national origin actually

34

is." *Id.* The *Abel* court therefore held that the plaintiff's claims of race and national origin discrimination and unlawful retaliation were not administratively exhausted because they were not "reasonably related" to the disability discrimination claim included in her EEOC charge. *Id.; see also Wilson*, 2007 WL 952066, at *4-5 (holding that plaintiff's race, color, and religious discrimination claims were not reasonably related to the disability, age, and gender claims included in EEOC charge).

As in *Abel*, plaintiff's EEOC Charge focuses entirely on her alleged disability: her diagnosis with carpal tunnel syndrome, her six-week leave of absence because of that diagnosis, her purported mistreatment for taking a leave of absence based on worker's compensation rather than disability, and the DOJ background investigation allegedly used as a pretext to fire her. (EEOC Charge at 3; Compl. at 5.) Additionally, like the plaintiff in *Abel*, who failed to mention her race or national origin, plaintiff here failed to identify her race or color in both her EEOC Charge and her Complaint. (*See generally* EEOC Charge; Compl.) In fact, plaintiff's EEOC Charge is bereft of any facts relevant to discrimination based on race or color. (*See* EEOC Charge at 2-3.) Consequently, plaintiff's claims of discrimination based on race and color are not "reasonably

related" to the disability and retaliation claims in her EEOC Charge.  Plaintiff has thus failed to exhaust her administrative remedies with respect to her Title VII claims.

Although plaintiff failed to administratively exhaust her Title VII claims, it is well established that "'filing a timely charge of discrimination with the EEOC is . . . a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.'" *Francis*, 235 F.3d at 767 (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)).  None of these principles excuse plaintiff's failure to timely exhaust her administrative remedies.

As a threshold matter, the court first notes that plaintiff's EEOC Charge, which alleged only retaliation and disability discrimination claims under the ADA, is untimely.  In her Complaint, plaintiff maintains that the alleged discriminatory acts occurred, at the latest, on August 14, 2009. (Compl. at 3.)  She further alleges that, to the best of her recollection, she filed her administrative charge with the EEOC on "9/2009," thereby rendering her EEOC Charge timely. (*Id.* at 4.)  Yet, as set forth in defendant's documentary exhibits supporting its motion to dismiss, plaintiff signed her EEOC Charge on December 6, 2010 and subsequently filed the Charge on

December 10, 2010, long after the three hundred-day period within which plaintiff was required to file her administrative charge. (EEOC Charge at 2.)  Although the court must assume the truth of "all well-pleaded, nonconclusory factual allegations in the complaint" when considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (citing *Iqbal*, 556 U.S. at 678), the court need not do so in the face of contrary documentation representing plaintiff's own claims, signed and dated by plaintiff, *see, e.g.*, *Fowlkes v. Rodriguez*, 584 F. Supp. 2d 561, 574 (E.D.N.Y. 2008) ("Although the court typically accepts plaintiff's allegations as true for purposes of a motion to dismiss, the court is permitted to consider and take judicial notice of certain documents, such as matters of public record, and reject the truthfulness of those allegations that are contradicted by the documents."); *In re Bausch & Lomb, Inc. Sec. Litig.*, 592 F. Supp. 2d 323, 350 n.30 (W.D.N.Y. 2008) ("It is well established that a Court need not accept as true any allegations that are contradicted by documents deemed to be part of the complaint, or materials amenable to judicial notice." (internal quotation marks omitted)); *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 555 (S.D.N.Y.

2004) ("The court need not accept as true an allegation that is contradicted by documents on which the complaint relies."). As such, the court finds that plaintiff's EEOC Charge, which was filed over a year after her termination and, in any event, did not include plaintiff's claims of discrimination based on race and color, was not timely filed within three hundred days of the defendant's alleged discriminatory acts.

Additionally, having raised plaintiff's failure to exhaust her administrative remedies in the instant motion to dismiss, defendant has not waived the defense. Plaintiff has also failed to allege, or set forth facts that warrant a finding, that defendant is estopped from raising the administrative exhaustion defense. Neither the defendant nor the EEOC has engaged in dilatory tactics or actions to "lull[] the plaintiff into believing that it was not necessary for [her] to commence litigation." *Cerbone v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45, 48-50 (2d Cir. 1985) (explaining the circumstances under which the doctrine of equitable estoppel may be applicable). Finally, plaintiff has failed to allege any basis for equitable tolling and has provided no reason warranting an extension of time to file an EEOC charge that includes the unexhausted Title VII claims based on race and

color.  In light of the foregoing, the court finds that plaintiff failed to timely exhaust her administrative remedies with respect to her Title VII claims.

Additionally, even if plaintiff's Title VII race and color discrimination claims were timely and properly exhausted, her Complaint, as alleged, fails to state discrimination claims based on race and color for which relief can be granted under Title VII.  Absent from plaintiff's Complaint are factual allegations that allow the court "to draw the reasonable inference that the defendant is liable" for discrimination based on plaintiff's race or color. *Iqbal*, 556 U.S. at 678.  Even liberally construed, the Complaint asserts only conclusions and labels with respect to defendant's alleged discrimination and provides no further factual matter that would render plausible plaintiff's Title VII claims.  Plaintiff merely checked the boxes for race and color discrimination on her *pro se* form Complaint. (*See* Compl. at 1, 3.)  Because plaintiff has failed to timely file her EEOC Charge, failed to include her race and color discrimination claims in her untimely EEOC Charge, failed to offer any explanation or reason that waiver, estoppel, or equitable tolling should be applied to her untimely EEOC Charge, and failed to allege sufficient facts to state a cognizable

Title VII claim based on race and color, the court finds that granting plaintiff leave to replead her Title VII claims based on race and color would be futile and therefore dismisses those claims with prejudice.

Moreover, if plaintiff wishes to preserve her remaining disability discrimination, failure-to-accommodate, and retaliation claims under the ADA, she must amend her Complaint to allege facts establishing why her initial failure to file a timely EEOC administrative charge as to her ADA disability claims should be excused by the equitable doctrines of waiver, tolling, or estoppel.

### C. Plaintiff's Remaining ADA Claims

Plaintiff's three remaining ADA claims, which, as previously noted, were not timely exhausted before the EEOC, also suffer from pleading inadequacies that warrant dismissal without prejudice and with leave to amend under Rule 12(b)(6).

#### 1. *Disability Discrimination/Wrongful Termination*

To state a claim for disability discrimination, plaintiff must allege that: (1) her employer is subject to the ADA; (2) she was disabled within the meaning of the ADA; (3) she was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) she

was fired or suffered an adverse employment action because of her disability. *E.g.*, *Brtalik v. S. Huntington Union Free Sch. Dist.*, No. 10-CV-10, 2010 WL 3958430, at *7 (E.D.N.Y. Oct. 6, 2010) (citing *Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty.*, 198 F.3d 68, 72 (2d Cir. 1999)).  Here, defendant does not dispute that it is an employer subject to the ADA. (Def. Mem. at 10-11.)  Rather, defendant challenges the sufficiency of plaintiff's Complaint based on the remaining three elements necessary to state a plausible disability discrimination claim.

Defendant first argues that plaintiff is not disabled within the meaning of the ADA because she fails to allege that her carpal tunnel syndrome "substantially limited" any of her major life activities. (*Id.* at 9-10.)  Defendant's argument, however, assumes an overly restrictive definition of the statutory term "disabled" and ignores 2008 amendments to the ADA, discussed below.  "The ADA defines a disabled individual as one who has '(A) a physical or mental impairment that substantially limits one or more major life activities of such individual[10]; (B) a record of such an impairment; or (C) [is]

_____

[10] "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating,

regarded as having such an impairment.'" *Padilla v. N.Y. State Dep't of Labor*, No. 09-CV-5291, 2010 WL 3835182, at *3 (S.D.N.Y. 2010) (alteration in original) (quoting 42 U.S.C. § 12102(1)). The court must construe "the definition of disability 'in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act.'" *Negron v. City of New York*, No. 10-CV-2757, 2011 WL 4737068, at *10 (E.D.N.Y. Sept. 14, 2011) (quoting 42 U.S.C. § 12102(4)(A)), *adopted by* 2011 WL 4729754 (E.D.N.Y. Oct. 6, 2011).

"A plaintiff who is 'regarded as' disabled is protected under the ADA even if she is not actually disabled." *Joseph v. N. Shore Univ. Hosp.*, No. 08-CV-3799, 2011 WL 573582, at *9 (E.D.N.Y. Feb. 15, 2011) (citing *Giordano v. City of New York*, 274 F.3d 740, 748 (2d Cir. 2001)), *aff'd*, 473 F. App'x 34 (2d Cir. 2012). Until recently, a plaintiff who alleged she was "regarded as" having a disability was required to show that the perceived disability was one that "substantially limited a major life activity." *Id.* Notably, however, the ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 112 Stat. 3553 (2008)

---

sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

(codified as amended at 42 U.S.C. §§ 12101-12102 (1990)),[11] set

forth a new, more lenient, standard for determining whether an

individual is "regarded as disabled":

> An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment *whether or not the impairment limits or is perceived to limit a major life activity*.

42 U.S.C. § 12102(3)(A) (emphasis added); *see Laurent v. G & G*

*Bus Serv., Inc.*, No. 10-CV-4055, 2011 WL 2683201, at *5-6

(S.D.N.Y. May 17, 2011) (quoting 42 U.S.C. § 12102(3)(A)),

*adopted by* 2011 WL 2693651 (S.D.N.Y. July 11, 2011).

─────────────────

[11] The court must apply the version of the ADA that was in effect at the time of the events underlying plaintiff's discrimination claims. *See Ragusa v. Malverne Union Free Sch. Dist.*, 381 F. App'x 85, 87 n.2 (2d Cir. 2010). Thus, the ADAAA does not apply to alleged conduct occurring before January 1, 2009, the effective date of the amended statute. *Cooke v. Berkshire Farm Ctr. & Servs. for Youth*, No. 11-CV-2970, 2012 WL 668612, at *5 n.3 (E.D.N.Y. Feb. 29, 2012) ("However, 'every court that has addressed th[e] issue . . . has concluded that the 2008 Amendments cannot be applied retroactively to conduct that preceded its effective date.'" (alterations in original) (quoting *Moran v. Premier Educ. Grp., LP*, 599 F. Supp. 2d 263, 271-72 (D. Conn. 2009))). Here, plaintiff alleges that defendant discriminated against her between June 1, 2006 and August 14, 2009. Although the ADAAA is inapplicable to any alleged discriminatory conduct occurring before January 1, 2009, the relevant adverse employment actions purportedly suffered by plaintiff occurred after that date. As alleged in the Complaint, plaintiff's termination occurred on August 14, 2009, months after the effective date of the ADAAA. Additionally, plaintiff alleges that Mr. Wooley threatened to terminate her on several occasions. Although the Complaint does not provide the specific dates on which Mr. Wooley's threats occurred, the court must construe the Complaint liberally and will, therefore, apply the lenient standards set forth under the ADAAA to Mr. Wooley's purported discriminatory conduct.

Pursuant to this more lenient standard, plaintiff is "not required to show that the disability [s]he is perceived as suffering from is one that actually limits, or is perceived to limit, a major life activity." *Darcy v. City of New York*, No. 06-CV-2246, 2011 WL 841375, at *4 (E.D.N.Y. Mar. 8, 2011). Nor does plaintiff have to "show that the employer had a reasonable basis for perceiving [her] as suffering from a disability; [the statute] merely requires [her] to show that the employer did so perceive [her]." *Id.* The ADAAA specifies, however, that the "regarded as" definition of disability does not apply to impairments that are both "transitory and minor." 42 U.S.C. § 12102(3)(B); *see also* 29 C.F.R. § 1630.15(f) ("It may be a defense to a charge of discrimination by an individual claiming coverage under the 'regarded as' prong of the definition of disability that the impairment is (in the case of an actual impairment) or would be (in the case of a perceived impairment) 'transitory and minor.'"). An impairment is transitory if it has "an actual or expected duration of 6 months or less." 42 U.S.C. § 12102(3)(B).

Construing plaintiff's Complaint liberally, as it must, the court finds that plaintiff alleges that she was regarded as disabled by FSA between June 1, 2006 and August 14,

44

2009. (EEOC Charge at 2.)  Specifically, in both her EEOC Charge
and her Complaint, plaintiff alleges that FSA granted her a six-
week leave of absence following her diagnosis with carpal tunnel
syndrome in May 2006. (Compl. at 5; EEOC Charge at 3.)
According to her EEOC Charge, plaintiff submitted medical
documentation to defendant to confirm her diagnosis. (EEOC
Charge at 3.)  Furthermore, plaintiff alleges facts rendering
plausible her claim that FSA regarded her as disabled.
Specifically, plaintiff avers that, during her six-week leave of
absence, her FSA manager, Mr. Wooley, informed her that she
should have taken disability leave instead of "[worker's]
compensation." (Compl. at 5; EEOC Charge at 3.)  Thus, plaintiff
has sufficiently alleged that defendant regarded her as disabled
in light of her diagnosis with carpal tunnel syndrome.  Although
defendant only authorized a six-week leave of absence for
plaintiff's disability, it is not apparent from the face of the
Complaint that plaintiff's impairment was "minor" or
"transitory" or that defendant interpreted her disability as
temporary or fleeting.  To the contrary, plaintiff's Complaint
and EEOC Charge allege that since May 2006 plaintiff has
suffered, and still suffers, from carpal tunnel syndrome. (*See*
Compl. at 5; EEOC Charge at 3.)  Accordingly, the court finds

that plaintiff has adequately alleged that she was disabled within the meaning of the ADA.

Fatal to plaintiff's Complaint, however, is the absence of any allegations that she was otherwise "qualified to perform the essential functions of [her] position, with or without reasonable accommodation." *Brtalik*, 2010 WL 3958430, at *7. Plaintiff "bears the burden of showing that [s]he was qualified for the job in question." *Piccolo v. Wal-Mart*, No. 11-CV-406S, 2012 WL 1965440, at *9 (W.D.N.Y. May 31, 2012) (citing *Borkowski v. Valley Cent. Sch. Dist.,* 63 F.3d 131, 137–38 (2d Cir. 1995)). Plaintiff has failed to discharge that burden here. The Complaint lacks any allegations establishing that plaintiff was qualified as a record examiner/analyst after the government's revocation of her security clearance. Moreover, plaintiff does not dispute that the government revoked her clearance after a DOJ background investigation and that a discrepancy in her credit was uncovered during that investigation. (*See* Compl. at 5; EEOC Charge at 3.) Instead, plaintiff baldly asserts that the background investigation was a pretext used to fire her on the basis of her disability. (EEOC Charge at 3.) Significantly, plaintiff does not allege that FSA conducted or participated in the purportedly pretextual

46

background investigation, nor does she allege that the background investigation was related to her disability. More critically, plaintiff fails to identify any facts rendering plausible her naked assertion that the revocation of her security clearance was a pretextual basis used by FSA to terminate plaintiff because of her carpal tunnel syndrome. Thus, plaintiff's Complaint, even liberally construed, does not provide defendant with fair notice of her ADA claim and the grounds on which it rests.

Additionally, the Complaint does not sufficiently allege that plaintiff suffered from any adverse employment action "because of [her] disability." *Brtalik*, 2010 WL 3958430, at *7. Instead, plaintiff tenders only bare allegations that FSA discriminated against her based on her carpal tunnel syndrome. Liberally construed, plaintiff's Complaint alleges two discriminatory adverse employment actions: (1) Mr. Wooley's threats to terminate plaintiff on unspecified dates and (2) plaintiff's termination on August 14, 2009. Plaintiff's allegations with respect to both purported adverse employment actions fail to give defendant any notice as to the basis for plaintiff's ADA discrimination claims.

First, plaintiff alleges that, on unspecified dates, Mr. Wooley threatened to terminate plaintiff because FSA was "not making any money off of [her]." (Compl. at 5.) As a threshold matter, such "[t]hreats of termination do not, by themselves, constitute an adverse employment action." *Weisbecker v. Sayville Union Free Sch. Dist.*, No. 10-CV-4645, 2012 WL 3975049, at *14 (E.D.N.Y. Sept. 12, 2012); *see also Murray v. Town of N. Hempstead*, 853 F. Supp. 2d 247, 269 (E.D.N.Y. 2012) ("As an initial matter, threats of termination cannot, by themselves, constitute an adverse employment action."). Moreover, even assuming for purposes of defendant's motion that Mr. Wooley's threats amounted to adverse employment actions, plaintiff's naked assertions regarding the purported threats do not give rise to an inference that these threats were related to her disability. Indeed, plaintiff offers no connection between her disability and Mr. Wooley's threats. To the contrary, plaintiff concedes that such threats were made because FSA was not making money from her contract work with the DOJ. (*See* Compl. at 5.)

Second, plaintiff alleges that defendant terminated her on August 14, 2009 because of her disability. (*Id.*; EEOC Charge at 3.) "[T]here is no question . . . that termination is

48

an adverse employment action." *Sista v. CDC Ixis N. Am., Inc.*,
445 F.3d 161, 169 (2d Cir. 2006). Nevertheless, plaintiff's
Complaint fails to allege that she was terminated "because of
her disability." In support of her discriminatory discharge
claim, plaintiff alleges that when she informed FSA of her
carpal tunnel syndrome in May 2006, Mr. Wooley "became very
upset" and "was yelling and very disrespectful." (Compl. at 5.)
According to the Complaint, Mr. Wooley scolded her for taking
her leave of absence on worker's compensation instead of
disability. (*Id.*) Plaintiff further alleges that after learning
of plaintiff's diagnosis, defendant authorized her to take a
six-week leave of absence, permitted her to return to her job
after that leave of absence, and then assigned her more duties
and responsibilities upon her return. (*Id.*; EEOC Charge at 3.)
These allegations are inadequate to render plausible plaintiff's
claim that she was discharged because of her disability.
Plaintiff was not discharged until several years after Mr.
Wooley allegedly yelled at her and scolded her for incorrectly
taking worker's compensation instead of disability leave, and
plaintiff "offers virtually no connection between any
disability" and her termination in August 2009. *Jackson v.
Elmhurst Hosp. Ctr.*, No. 10-CV-5248, 2012 WL 868965, at *6-7

(E.D.N.Y. Mar. 14, 2012) ("Where, as here, plaintiff has not pled any connection between a disability and an adverse employment action, dismissal is appropriate."). Indeed, plaintiff does not dispute that she was no longer qualified to work as a record examiner/analyst subsequent to the revocation of her security clearance.

Plaintiff has offered only conclusory allegations devoid of any factual matter rendering plausible her claim that defendant terminated her on the basis of her carpal tunnel syndrome. As a consequence, plaintiff's Complaint has failed to give "fair notice to the defendant of the basis for [her discriminatory discharge] claim," *Bakeer*, 2011 WL 3625103, at *22, and must be amended to address the aforementioned pleading deficiencies.

### 2. *Failure To Accommodate*

To state a failure-to-accommodate claim under the ADA, a plaintiff must allege that: (1) she was an individual with a disability within the meaning of the ADA; (2) defendant had notice of her disability; (3) she could perform the essential functions of her position with a reasonable accommodation; and (4) defendant refused to make such an accommodation. *Conley v. United Parcel Serv.*, 88 F. Supp. 2d 16, 18 (E.D.N.Y. 2000)

(citing *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999)); *see Pahuja*, 2012 WL 6592116, at *10 (citing *Geoghan v. Long Island R.R.*, No. 06-CV-1435, 2009 WL 982451, at *8 (E.D.N.Y. Apr. 9, 2009)).  For the reasons explained above, the court finds that the Complaint sufficiently alleges that plaintiff was disabled within the meaning of the ADA and that FSA was aware of her disability.  Nevertheless, the Complaint, as currently pled, cannot survive a motion to dismiss because plaintiff has not adequately alleged the last two elements of a failure-to-accommodate claim under the ADA.

Notably absent from plaintiff's Complaint are any allegations that plaintiff requested a reasonable accommodation or that FSA refused to make such an accommodation. *See Conley*, 88 F. Supp. 2d at 18.  In fact, plaintiff concedes that FSA granted her a six-week leave of absence for her carpal tunnel syndrome and permitted her to return to work after her leave. (Compl. at 5.)  Plaintiff does not allege that she needed, requested, or was refused an accommodation beyond the six weeks granted to her.  Rather, plaintiff merely asserts that she was terminated based on her disability several years after she informed defendant of her diagnosis with carpal tunnel syndrome. (*Id.*)  This single, conclusory allegation fails to give rise to

a plausible inference that defendant failed to accommodate plaintiff's disability.  As such, the Complaint leaves defendant without notice as to the basis for plaintiff's failure-to-accommodate claim under the ADA.  In her Amended Complaint, plaintiff must set forth allegations regarding her requests for reasonable accommodations, if any, that were denied by FSA.

### 3.  *Retaliation*

"To state an ADA retaliation claim, a plaintiff must plead facts that would tend to show that: (1) [s]he participated in a protective activity known to the defendant; (2) the defendant took an employment action disadvantaging [her]; and (3) there exists a causal connection between the protected activity and the adverse action." *Forgione v. City of New York*, No. 11-CV-5248, 2012 WL 4049832, at *10 (E.D.N.Y. Sept. 13, 2012) (citing *Patane v. Clark*, 508 F.3d 106, 115 (2d Cir. 2007); *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001)).  "To plead a plausible claim of retaliation on a motion to dismiss, . . . [a] plaintiff need only allege facts that could establish a causal nexus between a protected activity and the adverse employment action." *Pahuja*, 2012 WL 6592116, at *11 (citing *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) (summary order)).  Plaintiff's retaliation claim fares no better

than her other ADA claims: the Complaint is bereft of factual allegations that give rise to a reasonable inference that FSA retaliated against plaintiff for engaging in a protected activity.

Most significantly, plaintiff has failed to allege that she engaged in protected activity known to the defendant. In the retaliation context, "[c]omplaining about discrimination to a supervisor constitutes protected activity and an employer is forbidden from taking an adverse employment action against an employee in retaliation for engaging in such activity." *Forgione*, 2012 WL 4049832, at *10 (citing *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 65 (2d Cir. 1992)). According to her Complaint, plaintiff did not complain about FSA's discriminatory misconduct until the filing of her EEOC Charge in December 2010, long after her termination from FSA in August 2009. (*See* Compl. at 5; EEOC Charge at 2.) Moreover, even if plaintiff engaged in protected activity prior to her termination, the Complaint does not allege that defendant was aware of that protected activity or considered that protected activity in deciding to terminate plaintiff. (*See* Compl. at 5.) Nor does the Complaint provide any factual allegations that could establish a causal nexus between her unidentified

protected activity and any alleged adverse employment action. (*See id.*) Consequently, plaintiff's Complaint fails to state a plausible retaliation claim for which relief can be granted under the ADA and provides defendant with no notice of the basis for such a claim.

## CONCLUSION

For the foregoing reasons, defendant's Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is denied, and defendant's Rule 12(b)(5) motion to dismiss for insufficient service of process is denied without prejudice to renew. Plaintiff's untimely, unexhausted, and inadequately pled Title VII discrimination claims based on race and color are dismissed with prejudice. Mindful of the care exercised in this Circuit to avoid hastily dismissing complaints alleging potentially meritorious claims of civil rights violations, the court grants plaintiff leave to replead her remaining ADA claims in an Amended Complaint, which must be served in conformity with the Federal Rules of Civil Procedure within thirty days of this Memorandum and Order, or by April 4, 2013. Upon proper service of the Summons and her Amended Complaint, plaintiff shall file proof of such service with the court by filing an affidavit completed by the process server. Plaintiff is encouraged to

request a waiver of service from defendant pursuant to Rule
4(d).

In crafting her Amended Complaint, plaintiff must cure
the numerous pleading infirmities enumerated above to state
cognizable claims for which relief can be granted under the ADA.
In particular, plaintiff must plead sufficient facts to
establish that her failure to timely file her EEOC Charge should
be excused by the doctrines of waiver, estoppel, or equitable
tolling.  Additionally, plaintiff must plead sufficient facts to
state a plausible claim for relief under the ADA and must ensure
that her allegations give defendant fair notice of the basis for
her claims.

Should plaintiff fail to properly serve and file the
Summons and an Amended Complaint within thirty days of this
Memorandum and Order, the court will dismiss this action for
insufficient service of process pursuant to Rule 12(b)(5) or, in
the alternative, for failure to prosecute pursuant to Rule
41(b).  If defendant receives proper service, defendant may seek
leave to reinstate its motions to dismiss plaintiff's remaining
ADA claims in accordance with this court's Individual Rules,
available on the Eastern District of New York website.

The Clerk of the Court is respectfully directed to serve a copy of this Memorandum and Order and Court Exhibit 1 on plaintiff and note service on the docket.

**SO ORDERED.**


Dated:     Brooklyn, New York
           March 5, 2013

                              _____/s/_____
                              Kiyo A. Matsumoto
                              United States District Judge